UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAURA S. CLARK,                )
STEPHEN R. CLARK, and          )
SEJCO VENTURES, LLC,           )
                               )
            Plaintiffs         )
                               )
      vs.                      )        CAUSE NO. 3:08-CV-283 RM
                               )
OAKHILL CONDOMINIUM            )
ASSOCIATION, INC., et al.,     )
                               )
            Defendants         )

OPINION and ORDER

Laura and Stephen Clark bought a condominium in the Oakhill development in South Bend, Indiana, in June 2004 as a rental property investment. When the Oakhill Association's bylaws were amended in March 2007, the Clarks and their company, Sejco Ventures, LLC (the condominium's title holder), sued the condominium association and its individual board members in this court alleging housing discrimination. The Clarks claimed that the Association's restrictive covenants limited, and had a disparate impact on, the availability of rental housing for minorities and other protected classes in the South Bend area. The Clarks claimed, as well, that the restrictive covenants tortiously interfered with their tenant's lease and with their own reasonable expectation to receive rental income, and board members had breached their fiduciary duties and engaged in fraud by enacting the 2007 covenants.

After a three-day evidentiary hearing on the motion of the Clarks and Sejco for a preliminary injunction on their claims under the federal Fair Housing Act, § 3601 *et seq.*, and Indiana's Fair Housing Act, IND. CODE § 22-9.5-1, *et seq.*, the court denied the plaintiffs' request for injunctive relief based on its conclusion that

> The Clarks have no probative evidence whatsoever of discriminatory effect or of discriminatory intent. They cannot prevail on their claim under the federal Fair Housing Act as understood in <u>Metropolitan Housing Dev. Corp. v. Village of Arlington Heights</u>, 558 F.2d 1283 (7th Cir. 1977). Because they cannot prevail under the federal Act, there is no chance of success under the corresponding Indiana act, given the Indiana Supreme Court's view of disparate impact in <u>Villas West II of Willowridge Homeowners Assoc., Inc. v. McGlothin</u>, 885 N.E.2d 1274 (Ind. 2008). The Clarks have not demonstrated a better than negligible chance of success on the merits of either of the claims on which they seek preliminary injunctive relief, so the court needn't balance harms: the Clarks are not entitled to an injunction.

Sept. 15, 2008 Op. and Ord. [docket # 64], at 29. In October 2009, the court granted the Clarks' motion to dismiss their federal and state housing discrimination claims with prejudice and to dismiss their state law claims without prejudice. Judgment was entered on October 29, 2009.

This cause is before the court on the defendants' motion for an award of attorney fees, costs, and sanctions under Federal Rule of Civil Procedure 54(d), 42 U.S.C. § 3613(c)(2), and 28 U.S.C. § 1927. The defendants maintain that as prevailing parties in this litigation, they are entitled to recover their fees and costs under the Federal Rules of Civil Procedure and the Fair Housing Act; the defendants argue, too, that because the plaintiffs presented no evidence of any discriminatory intent or impact, they are entitled to an award of fees and costs as

a sanction for having to mount a defense against groundless housing discrimination claims. The Clarks have filed their objections to the motion and to the defendants' itemized fee request. For the reasons that follow, the court grants the defendants' motion for costs and request for fees under 42 U.S.C. § 3613(c)(2) and Federal Rule of Civil Procedure 54(d), making an analysis of the defendants' request under 28 U.S.C. § 1927 unnecessary.

## I. PREVAILING PARTY STATUS

The Fair Housing Act provides that "a court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2); *see also* FED. R. CIV. P. 54(d)(1) & (d)(2); IND. CODE § 22-9.5-9-1 (court may "award reasonable attorney's fees to the prevailing party"). "[T]o be a 'prevailing party,' a litigant must have obtained a judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties." Palmetto Properties, Inc. v. County of DuPage, 375 F.3d 542, 548 (7th Cir. 2004) (*citing* Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health & Human Servs., 532 U.S. 598, 604-605 (2001)); *see also* Claiborne v. Wisdom, 414 F.3d 715, 719 (7th Cir. 2005) ("This judgment must result in a material alteration of the legal relationship of the parties.").

The dismissal with prejudice of the Clarks' federal and state housing discrimination claims is a final judgment in the defendants' favor – *i.e.*, a "material alteration" of the parties' legal relationship – that makes the defendants the

prevailing party in the litigation. <u>Claiborne v. Wisdom</u>, 414 F.3d 715, 719 (7th Cir. 2005); *see also* <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1276 (11th Cir. 2007) ("The defendants, having obtained from [plaintiff] a voluntary dismissal with prejudice, are considered prevailing parties."); *cf.* <u>Mostly Memories, Inc. v. For Your Ease Only, Inc.</u>, 526 F.3d 1093, 1099 (7th Cir. 2008) ("There is no question that a dismissal with prejudice makes the defendant the prevailing party for purposes of an award of attorney's fees under [17 U.S.C.] § 505. This is no less true when a case is dismissed because the plaintiff 'threw in the towel' – that is, where the dismissal is on the plaintiff's own motion.").

## II. Costs

The defendants seek $18,752.18 in costs and expenses incurred from July 2008 through October 1, 2009, including photocopying expenses, shipping charges, witness fees, deposition and transcript costs, and online research expenses. While the Clarks object to certain of those costs as non-recoverable and improper under 28 U.S.C. § 1920 – *i.e.*, overnight shipping, online research, unidentified numbers of copies, and witness fees for people who didn't testify at the preliminary injunction hearing – 42 U.S.C. § 3613(c)(2), not 28 U.S.C. § 1920, governs the award of costs to the defendants.

The court in <u>Kossman v. Calumet County</u>, 849 F.2d 1027 (7th Cir. 1988), addressed the recovery of non-statutory costs in federal civil rights actions as follows:

4

> [E]xpenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates – expenses for such things as postage, long distance calls, xeroxing, travel, paralegals, and expert witnesses – are part of the reasonable attorneys' fees allowed by [federal civil rights statutes].

849 F.2d at 1031 (*quoting* Heiar v. Crawford County, 746 F.2d 1190, 1203 (7th Cir. 1984)); *see also* Levka v. City of Chicago, 107 F.R.D. 230, 231 (N.D. Ill. 1985) ("[The] City is correct that [Lexis charges] are not specifically authorized by 28 U.S.C. § 1920, but civil rights actions such as Levka's also entitle the plaintiff to an award of 'a reasonable attorney's fee as part of the cost' [under] 42 U.S.C. § 1988."); City of Chicago v. Matchmaker Real Estate Sales Center, Inc., No. 88-C-9695, 1991 WL 255582, at *3 (N.D. Ill. Nov. 20, 1991) (allowing recovery for photocopying, messenger service, computerized legal research, and attorney travel costs as part of "attorney's fees and costs" under 42 U.S.C. § 3613(c)(2)); *cf.* United States (EPA) v. Environmental Waste Control, Inc., 737 F. Supp. 1485, 1501 (N.D. Ind. 1990) (viewing "costs of litigation" under 42 U.S.C. § 6972 as including costs for travel, photocopying, and telephone, and general out-of-pocket expenses).

Recognizing the expedited nature of the proceedings before the preliminary injunction hearing, the distance between the offices of counsel (the Clarks in Missouri and Mr. Kus in Indiana), and defense counsel's inability to predict whether any or all of his potential witnesses would have to testify at that hearing, the court can't say that the costs being sought by the defendants were unnecessary or unreasonable. The court will grant the defendants' request for costs in the amount of $18,752.18.

III. ATTORNEYS' FEES

The standards for awarding fees under 42 U.S.C. § 1988 "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983); *see also* Palmetto Properties, Inc. v. County of DuPage, 375 F.3d 542, 547 (7th Cir. 2004). The "prevailing party" language of 42 U.S.C. § 3613(c)(2) parallels that of § 1988. Under § 1988, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," but a prevailing defendant "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." Hensley v. Eckerhart, 461 U.S. 424, 429 & n.2 (1983) (*citing* H.R. Rep. No. 94-1558, pp. 1, 7 (1976)); *see also* Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."). That strict standard is imposed to prevent a chilling effect on plaintiffs trying to vindicate their civil rights:

> [A]ssessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even

stronger basis for charging him with the attorney's fees incurred by the defense.

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978).

To decide whether the Clarks' claims were frivolous, unreasonable, or groundless, the court must examine their claims and their basis for filing suit. *See* Kennedy v. McCarty, 803 F. Supp. 1470, 1474 (S.D. Ind. 1992) ("The court must focus not on the facts ultimately determined, but on the plaintiff's version of the facts forming the basis for the suit."). The Clarks say they brought their claims on the theory that "by selectively excluding renters, [Oakhill's] restrictive covenants had a greater impact on minorities, which would satisfy the discriminatory effect factor." Resp., at 8. They say they presented expert testimony from the same expert who "used the same methodology and data that had been successful in the *Villas West II* trial, which ruling the Indiana Court of Appeals, following federal law, affirmed." Resp., at 8. They claim that they "presented sufficient evidence under well-established Seventh Circuit housing discrimination authority such that their claims were not 'frivolous' or 'meritless,' even though [they] did not prevail." According to the Clarks, "[t]o do anything other than deny [the] defendants' motion [for fees] would require performing a post hoc analysis based not on the circumstances that existed when the Clarks filed their suit, but rather on the fact that the Clarks were unsuccessful." Resp., at 2. The court can't agree.

Although Mr. Clark reports that he spent "many hours" investigating and researching the facts and the law relating to their claims, consulting with "numerous experts," and interviewing his tenants prior to filing suit, the court can't say that the Clarks, who are both licensed attorneys, could or should have reasonably believed that the incidents upon which they relied – reports from Oakhill's property manager that a "curry smell" was coming from their condominium and their tenant may have left a shopping cart in the development's parking lot, and that the Oakhill Board began discussing amending the covenants after the Pahs (who are Indian) vacated the Clarks' condominium – constituted evidence of intentional race-based housing discrimination.

The Clarks also say they relied on an expert who had "successfully" testified using the same methodology and data in a case involving similar issues that was affirmed by the Indiana Court of Appeals. The Clarks say they relied heavily on the opinion in <u>Villas West II of Willowridge v. McGlothin</u>, 841 N.E.2d 584 (Ind. Ct. App. 2006), in preparing their case and throughout the preliminary injunction hearing, not knowing that this court would reject their arguments. But the Indiana Supreme Court overturned that decision before the Clarks filed their complaint and the preliminary injunction hearing in this case, *see* <u>Villas West II of Willowridge Homeowners Assoc., Inc. v. McGlothin</u>, 885 N.E.2d 1274 (Ind. 2008), and they continued to rely on the vacated decision, arguing that the lower court's reasoning was stronger. The court can't agree that the Clarks' continued reliance on the decision of the court of appeals constituted legal support for their

claims of race-based housing discrimination. As attorneys, the Clarks should have known of the non-precedential value of an overturned case and that the decision of Indiana's highest court would be controlling. *See* Sept. 15, 2008 Op. and Ord, at 15 ("The task of a federal district court applying state law . . . is not to select the best view of state law, but, rather, to predict how the state's highest court will decide the issue. . . . One who wants state law changed should sue in state court, not federal court.").

The defendants suggest that the Clarks filed their complaint in retaliation for the board's denial of their request for a lease extension. The defendants note that six months before the complaint was filed, the Clarks sent an e-mail (dated December 12, 2007) to the Oakhill Board stating that they (the Clarks) believed that the prohibition on multiple leases was unenforceable and that "no legitimate justification for the 'no rent' provisions exists." The Clarks informed the board that, "We do not wish to engage in litigation with the Association with respect to extending [our tenant's] current lease by a year and prefer an amicable resolution, however we will do what is necessary to protect our investment and are confident in our legal position." They added that an award of "actual, nominal and punitive damages and reasonable attorney's fees and costs" had been made to a condominium owner who had challenged similar restrictive covenants, citing Villas West II v. McGlothin, 841 N.E.2d 584 (Ind. Ct. App. 2006). *See* Dec. 12, 2007 e-mail from plaintiffs to Oakhill Board of Directors (Deft. Hrg. Exh. I). The defendants conclude that the Clarks' e-mail constituted a threat of litigation

unless they were allowed to re-rent their unit: "When the board refused to submit to their threat, the [Clarks] filed their complaint." Deft. Memo., at 9.

The Clarks respond that the defendants' assertion that they filed suit for the purpose of harassing the defendants "ignores the extensive pre-suit investigation performed by the Clarks prior to filing suit, as well as the significant resources that the Clarks invested in pursuing this claim." Resp., at 4. The Clarks, though, haven't addressed or offered any explanation about their pre-suit e-mail.

The Clarks filed suit after the board denied their request that they be granted a lease extension for their condominium. Before filing suit, the Clarks' only complaint to the board was that they were being denied an opportunity to renew the lease for their tenant (a white male), and they informed the board that they would do "what is necessary to protect [their] investment." The Clarks' e-mail challenging the restrictive covenants contained no complaint of any race-based discrimination tied to the restrictive covenants or any allegation of race-based discrimination at the Oakhill property or by the board. While the court needn't decide whether the Clarks' tender of the December 2007 e-mail to the board is evidence of bad faith, the language contained in (and missing from) the e-mail raises questions about the Clarks' purpose for filing their lawsuit. *See* Kennedy v. McCarty, 803 F. Supp. 1470, 1473 n.1 (S.D. Ind. 1992) ("A showing of subjective bad faith is not required to allow a defendant to recover fees. . . . Courts have noted, however, that a finding of subjective bad faith makes the existence of a frivolous suit more clearly apparent."); Vitug v. Multistate Tax Comm'n, 883 F.

Supp. 215, 223 (N.D. Ill. 1995) (noting awards of attorney fees based on findings that a plaintiff "had turned the judicial system into a forum to air personal disputes and to carry out a personal vendetta" and another plaintiff's action "amounted to nothing more than speculation as to defendant's motives").

The court agrees with the Clarks that a "loser pays" rule shouldn't be used to impose a "chilling effect" on future litigants attempting to vindicate their rights under the federal and state fair housing acts, but both statutes specifically permit an award of fees to a prevailing defendant on a heightened burden of showing that a plaintiff's claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 422 (1978). Claims of intentional race-based housing discrimination are not *per se* frivolous and shouldn't be viewed as such, but groundless claims of housing discrimination are frivolous and the continued litigation of such claims is unreasonable. Viewing the record as it appeared before the Clarks filed their complaint, the court concludes that the Clarks' claims of intentional race-based housing discrimination were without foundation – without factual or legal support – such that the defendants are entitled to be reimbursed for the attorney fees they incurred in having to defend themselves in this lawsuit.

IV. Calculation of Fees

Deciding whether Oakhill's fee request is reasonable requires calculation of the lodestar amount, <u>Mathur v. Board of Trustees of Southern Ill. Univ.</u>, 317 F.3d 738, 742 (7th Cir. 2003), which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). Reasonable hourly rates should be based on "the prevailing market rates in the relevant community." <u>Perdue v. Kenny A, ex rel. Winn</u>, ___ U.S. ___, 130 S. Ct. 1662, 1672 (2010). An attorney's actual billing rate for comparable work is the "presumptively appropriate" market rate. <u>Muzikowski v. Paramount Pictures Corp.</u>, 477 F.3d 899, 909 (7th Cir. 2007). "The burden of proving the market rate is on the party seeking the fee award. However, once an attorney provides evidence establishing the market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." <u>Gautreaux v. Chicago Housing Auth.</u>, 491 F.3d 649, 659-660 (7th Cir. 2007) (citation omitted).

The defendants request fees amounting to $58,684.25 (original request of $55,436.25 and supplemental request of $3,248.00). Their request is based on a total of 454.21 hours incurred by attorney Martin Kus, at rates of $135 per hour through March 2009 and $140 per hour from April – December 2009; attorney Michelle Shirk, at rates of $130 per hour through December 2008, $135 per hour from January – June 2009 and $140 per hour from August – December 2009; attorney Nicholas Otis, at a rate of $125 per hour; and a paralegal assistant, at a rate of $65 per hour through March 2009 and $70 per hour from April – December 2009. The defendants also submitted affidavits from two local

attorneys, James Groves and John Ulmer, who both report that fees charged in this area by attorneys with the experience of Mr. Kus range from $150 to $250 per hour.

The Clarks object to the defendants' fee request, arguing, first, that because the defendants' fees and expenses "presumably have been fully paid by the insurer," the defendants have suffered no recoverable economic damages. The Clarks say, too, that they can't tell if any of counsels' time entries include travel time and since insurers generally don't pay counsel for travel time, they shouldn't be obligated to pay any travel expenses.

Case law in this circuit is to the contrary. In <u>United States v. Thouvenot, Wade & Moerschen, Inc.</u>, 596 F.3d 378, 383 (7th Cir. 2010), the court held that attorney fees may be awarded to a successful litigant even though the fees were incurred by the party's liability insurer.[1] *See also* <u>Stark v. PPM America, Inc.</u>, 354 F.3d 666, 674 (7th Cir. 2004) ("Stark also objected to the request for travel time for out-of-town attorneys. However, inclusion of that time was proper; travel time and expenses are compensable."). Thus, the Clarks can't prevail on their challenge to the fee request based on the existence of insurance coverage or because counsels' travel time was included. The court concludes, as well, that nothing in the record supports the Clarks' allegation that defense counsels' time entries

---

[1] The request of Thouvenot, Wade & Moerschen for fees arose under the Equal Access to Justice Act, which, similar to 42 U.S.C. § 3613(c)(2), provides for an award of "fees and other expenses" to "a prevailing party other than the United States," including "reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished . . . )." 28 U.S.C.A. §§ 2412(d)(1)(A), (d)(2)(A).

demonstrate "counsel's apparent concealment of travel time in their billing entries," Supp. Resp., at 3 n.2. The Clarks' unsupported accusation in this regard is not well-taken.

The Clarks also challenge numerous entries[2] on the defendants' time sheets as follows:

Block Billing (code BB) – The Clarks say that many of the defendants' entries amount to "lump sum billing" and those entries don't provide enough documentation to evaluate the reasonableness of the fee requested. They cite and object to 127.1 hours (fees of $17.029.50) of "block billing."

The defendants respond that all of the fifty-three entries labeled by the Clarks as "block billing" properly identify the tasks worked on and the time spent in tenths of an hour, thus allowing the court and opposing counsel to determine whether the time billed is reasonable.

A review of the entries labeled as "block billing" convinces the court that the challenged entries are sufficiently specific to permit a proper evaluation of the reasonableness of counsels' activities. Even where several tasks are listed in the same entry, participants in telephone calls and conferences are identified, topics of discussion are listed, and tasks undertaken by counsel are explained. *See, e.g.,* 6/25/08 entry: "Review of materials from Don Blackmond; from WB, dictate letter

---

[2] Many entries are challenged on more than one ground. *See, e.g.,* 8/8/08 entry: block billing, incomplete description, redundant and duplicative; 8/22/08 entry: block billing, inexperienced attorney, paralegal task; 1/9/09 entry: summary judgment related, inexperienced attorney, unnecessary time.

to Attorney Ettl; telephone call to Ettl's office regarding discovery deadlines; review local rules on admission for Attorney Clark;" 7/9/08 entry: "Conference with Sherry Scott, Craig Weyers and Dave Anthony at Oakhill Condo office re history of complaint and condo development; review of discovery requests; review documents for production;" and 7/24/09 entry: "Telephone conference with Paul Wyman on site review and opinion." The Clarks' summary labeling of those entries as "too vague" offers no explanation about what additional information they believe the entries should have included. Their objection to the "block billing" entries is overruled. *See* <u>Garcia v. R.J.B. Properties, Inc.</u> No. 06-C-4994, 2010 WL 2836749, at *6 (N.D. Ill. July 19, 2010) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice. There is nothing inherently wrong with combining multiple tasks into one entry." (internal quotations and citations omitted)).

<u>Vague Entries (code V)</u> – The Clarks claim that several of the defendants' billing entries are too vague to allow meaningful review of the time spent; they move to strike 18.8 hours (fees totaling $2,414) as vague.

The court disagrees that the entries challenged are "too vague" to allow a meaningful review of the tasks performed. The challenged entries identify the tasks performed, the people involved, and a general statement of the topic of conversation or review. *See, e.g.,* 7/21/08 entry: "Telephone conference with Bernie Dietrich, realtor; email to Paul Wyman;" 8/6/08 entry: "Correspondence

to Bernie Dietrich regarding expert report;" and 8/29/08 entry: "Review of online information re local realtor/witness Doug Schrof." The court agrees with the defendants that "[t]he plaintiffs are not entitled to know every detail of the communication or contact. Such information would cause the defendants to waive confidentiality in order to make a claim for fees." Supp. Reply, at 7-8. The court overrules the Clarks' objections to the entries labeled as "too vague." *See* Delgado v. Mak, No. 06-C-3757, 2009 WL 211862, at *4 (N.D. Ill. Jan. 29, 2009) ("The standard for evaluating the amount of itemization and detail in time entries in a fee petition . . . appears to be based on the market – that is, the level of detail paying clients find satisfactory.").

Non-Billable Entries (code NB) – The Clarks move to strike various billing entries they say don't appear to relate to this case (one hour of time; fees totaling $133.50). They specifically complain that they don't know the identity of "Rollin Krafft" or "Hedge Lease," names identified in entries for which the defendants seek reimbursement, and so they can't tell whether the time entries listed are related to this litigation.

In response, the defendants identified Rollin Krafft as an attorney in the legal department at West Bend Mutual Insurance Company, Oakhill's insurer, establishing that defense counsels' interaction with Mr. Krafft was related to this litigation. The defendants have explained that Mr. Hedge is an Oakhill condominium owner who inquired about his ability to lease his unit more than

three times, and counsels' correspondence relating to the "Hedge Lease" was to advise Oakhill personnel on how to handle the inquiry. The defendants have agreed to withdraw their request for reimbursement relating to the Hedge Lease matter, resulting in a reduction in their fee request of $70.00, including .3 hours on 9/28/09 and .2 hours on 10/2/09.

The court will reduce the defendants' fees by $70.00.


Unnecessary Time Entries (code U) – The Clarks object to billing entries they claim "do not appear to relate to the case." They challenge time entries relating to counsels' contacts with three people (Howard Campbell, Bernie Dietrich, and Doug Shrof) who didn't testify at the preliminary injunction hearing. They ask the court to strike 35.1 hours of time and fees totaling $4,461.50.

The defendants explain in their response that Mr. Schrof is a realtor and property manager of condominiums located in the same rental area as the Oakhill property who was contacted by defense counsel as a potential witness to testify about the availability of condominiums for rent near the Notre Dame campus. The defendants say that counsel's contacts with Howard Campbell, "an expert witness from Indianapolis and a past director of federal housing sites and knowledgeable about Fair Housing Act claims," was related to this case. Supp. Reply, at 4. The defendants also explain that Bernie Dietrich is a "real estate appraiser from South Bend with knowledge of the location and pricing of rentals in the near geographic

area of Oakhill and was identified to the plaintiffs by [defense counsel] as a possible expert witness on this subject." Supp. Reply, at 5.

Because "[a]n attorney may, and should, interview witnesses who have factual information regarding claims asserted," <u>Sassaman v. Heart City Toyota</u>, 879 F. Supp. 901, 917 (N.D. Ind. 1994), and the defendants represent that their counsels' contacts with the various people challenged by the Clarks related to preparation of their defense, the defendants will be permitted to recover those fees. The Clarks have cited no authority for the proposition that a potential witness's simply not testifying renders the time spent with that witness unreasonable. The court overrules the Clarks' objection to the time entries they label as "unnecessary."


<u>Duplicative Attorney Time (code 2)</u> and <u>Redundant and Duplicative Entries (code R/D)</u> – The Clarks claim many of the billing entries amount to duplicative attorney time, specifically challenging attorney Shirk's work, which the Clarks label as Ms. Shirk's observation and "training time." They ask that 26.5 hours of Ms. Shirk's time ($3,445 in fees) be stricken from the fee request. They also say the defendants shouldn't be able to recover fees for 8.5 hours of billing entries ($2,232 in fees) showing that two attorneys worked on the same tasks.

In response, the defendants explain that the expedited discovery schedule in this case required that Mr. Kus divide his responsibilities among different attorneys in his firm to meet the deadlines, justifying some overlap among the

attorneys. The defendants cite the following example: entries from 9/16/08 show that Mr. Kus and Ms. Shirk both reviewed the court's opinion and order denying the Clarks' request for a preliminary injunction. "Under the circumstances of this case . . . both attorneys needed to review the order, one [Mr. Kus] to report to the clients and plan litigation strategy and the other [Ms. Shirk] to prepare for summary judgment. Both [time entries] are submitted as necessary and reasonable charges under these circumstances." Supp. Reply, at 10.

The defendants' explanation about the challenged time entries is credible, especially in light of the expedited discovery schedule. *See* <u>Greenfield Mills, Inc. v. Carter</u>, 569 F. Supp. 2d 737, 751 (N.D. Ind. 2008) ("If multiple attorneys represent a prevailing party, then that party may be able to recover a reasonable fee for each of the attorneys. The proper question is whether the application, for one or more attorneys, is reasonable." (internal quotation and citation omitted)). While "a court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services," <u>id.</u>, no evidence of inefficiency has been tendered, and under the circumstances of this case, some duplicative attorney time could be expected and would be reasonable. Nothing in this record supports a finding that Ms. Shirk's involvement in this case was "training time" or that her presence at the injunction hearing was merely as an observer. The Clarks' objection to these entries is overruled.

Attorneys Performing Paralegal Work (code P) and Clerical Work (code C) –
The Clarks claim 3.2 hours of work performed by defense counsel should have
been performed by, and billed at the rate for, a paralegal rather than an attorney.
They ask that the fees be reduced by $415. The Clarks also object to billing entries
they label as clerical matters, arguing that it is well settled that a party can't
recover attorney fees for tasks that are clerical in nature, such as telephone
conferences with court personnel or cover letters that simply enclose documents.
They seek to strike 44.51 hours of time, representing fees of $4,990.25.

The defendants say, first, that Mr. Otis' review and entry of documents into
a privilege log wasn't a paralegal function: they submit that those tasks had "to
be performed by someone with an understanding and knowledge of waiver,
attorney-client privilege, work product and, in the case of multiple defendants,
joint defense agreements and concepts." Supp. Reply, at 10. The defendants also
report that a number of the entries relating to conferences between counsel and
court personnel involved scheduling hearing dates and confirming filings in the
case. The defendants note that Mr. Clark was a participant in two of the calls and
two of the calls were initiated by court personnel. In addition, defense counsel
explains that his practice is to personally send correspondence to individuals
relating to professional services "to ensure prompt response and to encourage
continued relationships." Supp. Reply, at 11.

The defendants have offered reasonable explanations for their counsels'
personal involvement in the challenged tasks. The Clarks' belief that someone

other than an attorney should have performed the work at issue doesn't convince the court that the entries should be stricken. Their objections are overruled.

Inexperienced Attorneys; Learning Curve Time (code E) – The Clarks claim the defendants improperly charged for excessive work and "learning curve time" for junior associates with little experience who worked on this case. They suggest that several entries should reflect a lower rate for those attorneys (136.45 hours; fees of $17,583.25).

The defendants dispute the Clarks' characterization of Ms. Shirk as an "apprentice attorney" and their criticism of Mr. Otis as an inexperienced attorney likely to take more time to finish assigned tasks. According to the defendants, the entries for Ms. Shirk and Mr. Otis don't show excessive work or doubling up on any charges, but accurately reflect the legal work they performed on this case. The defendants explain that based on the expedited discovery schedule, "[t]he defense necessarily had to divide responsibilities among different attorneys to meet the schedule. There was some necessary overlap among the attorneys' work as when preparing for the four day hearing required [Mr. Kus] to review matters previously worked on by Ms. Shirk or Mr. Otis. That, however, is the price the litigant pays when compressing discovery into a 70 day window of time." Supp. Reply, at 9.

The hourly rates charged by Ms. Shirk and Mr. Otis reflect the fact that they aren't as experienced as Mr. Kus. The Clarks have offered nothing more than their own opinion that the work performed by Ms. Shirk and Mr. Otis should be

charged at a still lower rate. They have offered no evidence of what "neophyte associates" practicing in this area should or do charge. The Clarks' objection to the hours and rates billed by Ms. Shirk and Mr. Otis is overruled.

Incomplete Descriptions (code I) – The Clarks seek to strike all incomplete entries submitted by the defendants, including entries with incomplete descriptions of work performed (15.7 hours; fees of $2,052.50).

The defendants explain that certain words contained the entries challenged by the Clarks were inadvertently dropped off during printing. The defendants have submitted those entries showing the dropped words and demonstrating, the defendants say, that those entries were necessary and reasonable.

Because it appears that the dropping of certain words from the challenged entries was a mistake that has been corrected, the court overrules the Clarks' objection to those entries as incomplete.

Entries for Defendants' Motion for Summary Judgment (code MSJ) – The Clarks lastly object to defendants' inclusion of time spent and fees incurred for preparing a summary judgment motion (32.1 hours; fees of $4,228.50). They point out that the defendants' motion was drafted in February and March of 2009, but was never filed even though the defendants had "ample time to do so."

The defendants represent that their counsel prepared and drafted a summary judgment motion in anticipation of filing it at the close of discovery.

They maintain that the work performed on that motion was necessary and appropriate in this case.

Magistrate Judge Nuechterlein set September 15, 2009 as the close of discovery at the parties' January 6, 2009 scheduling conference. On September 15, the discovery deadline was extended to November 15 at the parties' request; the Clarks filed their motion to dismiss on October 23. The Clarks complain that the defendants could have filed their summary judgment motion as early as March, but didn't. But defense counsel may have believed that "there would have been no point in filing a summary judgment motion until [the parties] had had a reasonable opportunity to conduct discovery." Containment Tech. Group, Inc. v. American Society of Health Sys. Pharmacists, No. 1:07-CV-997, 2009 WL 2750093, at *5 (S.D. Ind. Aug. 26, 2009), and the court won't second-guess what constitutes a reasonable time-table for the defendants to prepare their defense or file appropriate motions.

The court can't say that defense counsels' preparation of a summary judgment motion during the course of discovery was unreasonable or inappropriate, especially given that when the defendants contacted the Clarks about settling this case following entry of the court's order denying the preliminary injunction motion, the Clarks indicated that they were "inclined to continue litigating." Deft. Reply, Exh. B. The Clarks' objection to the time entries relating to the preparation of the summary judgment is overruled. *See* Containment Tech.

Group, 2009 WL 2750093, at *5 ("the timing of the motions for summary judgment offers no basis for reducing the requested fees").

V. CONCLUSION

Based on the foregoing, the court GRANTS the defendants' motion for fees and costs [docket # 95] pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 3613(c)(2) in the following amounts:

|  |  |
|---|---|
| Costs | $ 18,752.18 |
| Attorneys' Fees | $ 58,614.25 |

SO ORDERED.

ENTERED:   March 31, 2011   


     /s/ Robert L. Miller, Jr.           
Judge, United States District Court